E. MARTIN ESTRADA
United States Attorney
SCOTT M. GARRINGER
Assistant United States Attorney
Chief, Criminal Division
KAREN I. MEYER (Cal. Bar No. 220554)
Assistant United States Attorney
Violent and Organize Crime Section
    1300 United States Courthouse
    312 North Spring Street
    Los Angeles, California 90012
    Telephone: (213) 894-8559
    Facsimile: (213) 894-3713
    E-mail:   kim.meyer@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>        Plaintiff,<br><br>        v.<br><br>JACK NGUYEN,<br><br>        Defendant. | No. CR 15-662-ODW<br><br>PLEA AGREEMENT FOR DEFENDANT JACK NGUYEN |

1. This constitutes the plea agreement between defendant Jack Nguyen ("defendant") and the United States Attorney's Office for the Central District of California (the "USAO") in the above-captioned case. This agreement is limited to the USAO and cannot bind any other federal, state, local, or foreign prosecuting, enforcement, administrative, or regulatory authorities.

DEFENDANT'S OBLIGATIONS

2. Defendant agrees to:

    a. At the earliest opportunity requested by the USAO and provided by the Court, appear and plead guilty to count eleven of the indictment in United States v. Jack Nguyen, CR No. 15-662-ODW, which

charges defendant with conspiracy to launder money in violation of 18 U.S.C. § 1956(h).

      b. Not contest facts agreed to in this agreement.

      c. Abide by all agreements regarding sentencing contained in this agreement.

      d. Appear for all court appearances, surrender as ordered for service of sentence, obey all conditions of any bond, and obey any other ongoing court order in this matter.

      e. Not commit any crime; however, offenses that would be excluded for sentencing purposes under United States Sentencing Guidelines ("U.S.S.G." or "Sentencing Guidelines") § 4A1.2(c) are not within the scope of this agreement.

      f. Be truthful at all times with the United States Probation and Pretrial Services Office and the Court.

      g. Pay the applicable special assessment at or before the time of sentencing unless defendant has demonstrated a lack of ability to pay such assessments.

## THE USAO'S OBLIGATIONS

3. The USAO agrees to:

      a. Not contest facts agreed to in this agreement.

      b. Abide by all agreements regarding sentencing contained in this agreement.

      c. At the time of sentencing, provided that defendant demonstrates an acceptance of responsibility for the offenses up to and including the time of sentencing, recommend a two-level reduction in the applicable Sentencing Guidelines offense level, pursuant to U.S.S.G. § 3E1.1, and recommend and, if necessary, move for an additional one-level reduction if available under that section.

## NATURE OF THE OFFENSE

4. Defendant understands that for defendant to be guilty of the crime charged in count eleven, that is, money laundering conspiracy, in violation of Title 18, United States Code, Section 1956(h), the following must be true:

First, beginning on a date unknown and continuing until on or about August 18, 2013, there was an agreement between two or more persons to violate Title 18, United States Code, Section 1956(a)(2)(B)(i), (ii); and

Second, defendant joined the agreement knowing of its object and intending to help accomplish it.

The elements of money laundering in violation of Title 18, United States Code, Section 1956(a)(2)(B)(i), (ii), are:

First, defendant or a co-conspirator would transport a monetary instrument or funds from a place in the United States to or through a place outside the United States or to a place in the United States from or through a place outside the United States;

Second, defendant believed that the monetary instrument or funds represented the proceeds of some form of unlawful activity; and

Third, defendant believed that the transportation was designed either in whole or in part to conceal or disguise the nature, location, source, ownership, and control of the proceeds of specified unlawful activity, namely drug trafficking, or to avoid a transaction reporting requirement under State or Federal law.

## PENALTIES

5. Defendant understands that the statutory maximum sentence that the Court can impose for a violation of Title 18, United States Code, Section 1956(h), is: 20 years' imprisonment; a three-year

3

1  period of supervised release; a fine of not more than $500,000, or
2  twice the value of the monetary instrument or funds involved in the
3  transportation, transmission, or transfer, whichever is greater; and
4  a mandatory special assessment of $100.

5      6.   Defendant understands that supervised release is a period
6  of time following imprisonment during which defendant will be subject
7  to various restrictions and requirements.  Defendant understands that
8  if defendant violates one or more of the conditions of any supervised
9  release imposed, defendant may be returned to prison for all or part
10 of the term of supervised release authorized by statute for the
11 offense that resulted in the term of supervised release, which could
12 result in defendant serving a total term of imprisonment greater than
13 the statutory maximum stated above.

14     7.   Defendant understands that, by pleading guilty, defendant
15 may be giving up valuable government benefits and valuable civic
16 rights, such as the right to vote, the right to possess a firearm,
17 the right to hold office, and the right to serve on a jury.
18 Defendant understands that he is pleading guilty to a felony and that
19 it is a federal crime for a convicted felon to possess a firearm or
20 ammunition.  Defendant understands that the conviction in this case
21 may also subject defendant to various other collateral consequences,
22 including but not limited to revocation of probation, parole, or
23 supervised release in another case and suspension or revocation of a
24 professional license.  Defendant understands that unanticipated
25 collateral consequences will not serve as grounds to withdraw
26 defendant's guilty plea.

27     8.   Defendant and his counsel have discussed the fact that, and
28 defendant understands that, if defendant is not a United States

4

citizen, the conviction in this case makes it practically inevitable and a virtual certainty that defendant will be removed or deported from the United States.  Defendant may also be denied United States citizenship and admission to the United States in the future. Defendant understands that while there may be arguments that defendant can raise in immigration proceedings to avoid or delay removal, removal is presumptively mandatory and a virtual certainty in this case.  Defendant further understands that removal and immigration consequences are the subject of a separate proceeding and that no one, including his attorney or the Court, can predict to an absolute certainty the effect of his conviction on his immigration status.  Defendant nevertheless affirms that he wants to plead guilty regardless of any immigration consequences that his plea may entail, even if the consequence is automatic removal from the United States.

                          FACTUAL BASIS

    9.   Defendant admits that defendant is, in fact, guilty of the offense to which defendant is agreeing to plead guilty.  Defendant and the USAO agree to the statement of facts provided below and agree that this statement of facts is sufficient to support a plea of guilty to the charge described in this agreement and to establish the Sentencing Guidelines factors set forth in paragraph 11 below but is not meant to be a complete recitation of all facts relevant to the underlying criminal conduct or all facts known to either party that relate to that conduct.

    In 2012, co-defendants Bill Lu ("Lu"), Ben Ho ("Ho"), Tom Huynh ("Huynh"), and Renaldo Negele ("Negele"), agreed to sell to a confidential informant ("CS1") and an undercover law enforcement officer ("UC2") a new or existing foundation in the country of

Liechtenstein as a vehicle to be used for laundering money around the world and for bringing funds generated through criminal activity into the United States. Defendant J. Nguyen joined the conspiracy in early 2013. UC2 told defendant J. Nguyen and the co-defendants that his cash came from the trade of weapons for drugs in Nigeria, and the sale of these drugs in Europe for cash.

On February 21, 2013, defendant J. Nguyen and co-defendants Ho, Lu, Negele, and CS1, and UC2 met at Rochester Enterprises, co-defendant Ho's health care company, to discuss the use of a foundation to launder money. Co-defendant Ho introduced defendant J. Nguyen to CS1 as legal counsel for the United States division of SwissLoans, co-defendant Ho's and co-defendant Negele's company, which co-defendant Ho described as a group of financial services companies involved in the creation, purchase, and management of foundations. UC2 told defendant J. Nguyen and these co-defendants that the money UC2 was looking to launder was from the sale of drugs in Europe that had been obtained by exchanging weapons for drugs in Nigeria. During this February 21, 2013 meeting, defendant J. Nguyen discussed his international legal experience in Asia.

A week later, co-defendant Lu and CS1 drove to Rochester Enterprises and met with defendant J. Nguyen and co-defendants Ho and Negele to discuss the proposed creation of a foundation that could be used to launder money. After CS1 started to explain the meaning of "not clean money," defendant J. Nguyen interrupted CS1 and described the money as "unaccounted," and defendant Ho said that they knew what CS1 meant. During this meeting, co-defendant Lu discussed with defendant J. Nguyen and CS1 how buying a bank in Cambodia with CS1's

dirty money could be used to launder that cash by monetizing financial instruments.

On June 18, 2013, at Foster Pharmaceuticals, Ho's subsequent pharmaceuticals business where defendant J. Nguyen kept an office, CS1 met with defendant J. Nguyen and co-defendants Ho and Lu to continue discussing foundation-based money laundering transactions. Defendant J. Nguyen stated that he worked on international business transactions, including working in Singapore, India, Hong Kong, and selling securities in Indonesia, reflecting a special skill to facilitate the crime. Defendant J. Nguyen and co-defendant Lu also stated that defendant J. Nguyen would be registered in the Cambodian bar.

On August 14, 2013, at Foster Pharmaceuticals, defendant J. Nguyen and co-defendants Lu, Ho, and Negele met with CS1 and UC2 to discuss a proposal from defendant Negele to set up a foundation to launder money. On August 18, 2013, CS1 and UC2 met defendant J. Nguyen and co-defendants Ho, Lu, and Negele at the Pacific Palms Resort in the City of Industry to continue their conversation about setting up a foundation, and during lunch, defendant J. Nguyen and co-defendant Ho took CS1 and UC2 aside and asked whether CS1 and UC2 knew anyone in Kamala Harris' office, the California Attorney General at the time, who could be bribed to shut down an investigation into Rochester Enterprises and Foster Pharmaceuticals, co-defendant Ho's pharmaceutical companies. Defendant J. Nguyen said they were willing to make a payment in the amount of "six figures" to shut down any investigation.

Defendants received bank account information from CS1 and UC2 from which to do a test transaction, but defendants did not send the test transaction.

Defendant J. Nguyen and the co-defendants agreed to launder $125,000, which was the 1.25% set-up fee for a fully funded foundation of $10 million. Defendant knew that the foundation would be used for the purpose of concealing the proceeds from the sale of illegal narcotics and illegal weapons.

## SENTENCING FACTORS

10. Defendant understands that in determining defendant's sentence the Court is required to calculate the applicable Sentencing Guidelines range and to consider that range, possible departures under the Sentencing Guidelines, and the other sentencing factors set forth in 18 U.S.C. § 3553(a). Defendant understands that the Sentencing Guidelines are advisory only, that defendant cannot have any expectation of receiving a sentence within the calculated Sentencing Guidelines range, and that after considering the Sentencing Guidelines and the other § 3553(a) factors, the Court will be free to exercise its discretion to impose any sentence it finds appropriate up to the maximum set by statute for the crime of conviction.

11. Defendant and the USAO agree to the following applicable Sentencing Guidelines factors:

| | | |
|---|---|---|
| Base Offense Level: | 8 | [USSG §§ 2S1.1(a)(2); 2x1.1] |
| Amount > $95,000 but ≤ $150,000 (value of laundered funds) | +8 | [USSG §§ 2S1.1(1),(2); 2B1.1(b)(1)(E)] |

```
Specific Offense
Characteristics:

    Defendant believed
    that laundered funds
    were proceeds of
    distribution of a
    controlled substance      +6    [USSG §2S1.1(b)(1)(B)(i)]

    Convicted of
    18 U.S.C. § 1956          +2    [USSG § 2S.1.1(b)(2)(B)]

    Defendants did not
    complete all necessary
    acts                      -3    [USSG § 2x1.1(b)(2)]

Adjustments:

    Abuse of Position of
    Trust or Use of
    Special Skill             +2    [USSG § 3B1.3]

Acceptance of
Responsibility:               -3    [USSG § 3E1.1(a), (b)]

Total Offense level:          20
```

The USAO will agree to a two-level downward adjustment for acceptance of responsibility (and, if applicable, move for an additional one-level downward adjustment under U.S.S.G. § 3E1.1(b)) only if the conditions set forth in paragraph 3(c) are met and if defendant has not committed, and refrains from committing, acts constituting obstruction of justice within the meaning of U.S.S.G. § 3C1.1, as discussed below.  Subject to paragraph 22 below, defendant and the USAO agree not to seek, argue, or suggest in any way, either orally or in writing, that any other specific offense characteristics, adjustments, or departures relating to the offense level be imposed. Defendant agrees, however, that if, after signing this agreement but prior to sentencing, defendant were to commit an act, or the USAO were to discover a previously undiscovered act committed by defendant

9

prior to signing this agreement, which act, in the judgment of the USAO, constituted obstruction of justice within the meaning of U.S.S.G. § 3C1.1, the USAO would be free to seek the enhancement set forth in that section and to argue that defendant is not entitled to a downward adjustment for acceptance of responsibility under U.S.S.G. § 3E1.1.

12. Defendant understands that there is no agreement as to defendant's criminal history or criminal history category.

13. Defendant and the USAO reserve the right to argue for a sentence outside the sentencing range established by the Sentencing Guidelines based on the factors set forth in 18 U.S.C. § 3553(a)(1), (a)(2), (a)(3), (a)(6), and (a)(7).

## WAIVER OF CONSTITUTIONAL RIGHTS

14. Defendant understands that by pleading guilty, defendant gives up the following rights:

    a. The right to persist in a plea of not guilty.

    b. The right to a speedy and public trial by jury.

    c. The right to be represented by counsel -- and if necessary have the Court appoint counsel -- at trial. Defendant understands, however, that, defendant retains the right to be represented by counsel -- and if necessary have the Court appoint counsel -- at every other stage of the proceeding.

    d. The right to be presumed innocent and to have the burden of proof placed on the government to prove defendant guilty beyond a reasonable doubt.

    e. The right to confront and cross-examine witnesses against defendant.

   f. The right to testify and to present evidence in opposition to the charges, including the right to compel the attendance of witnesses to testify.

   g. The right not to be compelled to testify, and, if defendant chose not to testify or present evidence, to have that choice not be used against defendant.

   h. Any and all rights to pursue any affirmative defenses, Fourth Amendment or Fifth Amendment claims, and other pretrial motions that have been filed or could be filed.

WAIVER OF APPEAL OF CONVICTION

 15. Defendant understands that, with the exception of an appeal based on a claim that defendant's guilty plea was involuntary, by pleading guilty defendant is waiving and giving up any right to appeal defendant's conviction on the offense to which defendant is pleading guilty.  Defendant understands that this waiver includes, but is not limited to, arguments that the statute to which defendant is pleading guilty is unconstitutional, and any and all claims that the statement of facts provided herein is insufficient to support defendant's plea of guilty.

LIMITED MUTUAL WAIVER OF APPEAL OF SENTENCE

 16. Defendant agrees that, provided the Court imposes a total term of imprisonment on the count of conviction of no more than 41 months, defendant gives up the right to appeal all of the following: (a) the procedures and calculations used to determine and impose any portion of the sentence; (b) the term of imprisonment imposed by the Court; (c) the fine imposed by the Court, provided it is within the statutory maximum; (d) to the extent permitted by law, the constitutionality or legality of defendant's sentence, provided it is

within the statutory maximum; (e) the term of probation or supervised release imposed by the Court, provided it is within the statutory maximum; and (f) any of the following conditions of probation or supervised release imposed by the Court: the conditions set forth in Second Amended General Order 20-04 of this Court; the drug testing conditions mandated by 18 U.S.C. §§ 3563(a)(5) and 3583(d); and the alcohol and drug use conditions authorized by 18 U.S.C. § 3563(b)(7).

17.  The USAO agrees that, provided (a) all portions of the sentence are at or below the statutory maximum specified above and (b) the Court imposes a term of imprisonment of no less than 33 months, the USAO gives up its right to appeal any portion of the sentence.

## RESULT OF WITHDRAWAL OF GUILTY PLEA

18.  Defendant agrees that if, after entering a guilty plea pursuant to this agreement, defendant seeks to withdraw and succeeds in withdrawing defendant's guilty plea on any basis other than a claim and finding that entry into this plea agreement was involuntary, then the USAO will be relieved of all of its obligations under this agreement.

## EFFECTIVE DATE OF AGREEMENT

19.  This agreement is effective upon signature and execution of all required certifications by defendant, defendant's counsel, and an Assistant United States Attorney.

## BREACH OF AGREEMENT

20.  Defendant agrees that if defendant, at any time after the signature of this agreement and execution of all required certifications by defendant, defendant's counsel, and an Assistant United States Attorney, knowingly violates or fails to perform any of

defendant's obligations under this agreement ("a breach"), the USAO may declare this agreement breached. All of defendant's obligations are material, a single breach of this agreement is sufficient for the USAO to declare a breach, and defendant shall not be deemed to have cured a breach without the express agreement of the USAO in writing. If the USAO declares this agreement breached, and the Court finds such a breach to have occurred, then: (a) if defendant has previously entered a guilty plea pursuant to this agreement, defendant will not be able to withdraw the guilty plea, and (b) the USAO will be relieved of all its obligations under this agreement.

<u>COURT AND UNITED STATES PROBATION AND PRETRIAL SERVICES OFFICE NOT PARTIES</u>

21. Defendant understands that the Court and the United States Probation and Pretrial Services Office are not parties to this agreement and need not accept any of the USAO's sentencing recommendations or the parties' agreements to facts or sentencing factors.

22. Defendant understands that both defendant and the USAO are free to: (a) supplement the facts by supplying relevant information to the United States Probation and Pretrial Services Office and the Court, (b) correct any and all factual misstatements relating to the Court's Sentencing Guidelines calculations and determination of sentence, and (c) argue on appeal and collateral review that the Court's Sentencing Guidelines calculations and the sentence it chooses to impose are not error, although each party agrees to maintain its view that the calculations in paragraph 11 are consistent with the facts of this case. While this paragraph permits both the USAO and defendant to submit full and complete factual

information to the United States Probation and Pretrial Services Office and the Court, even if that factual information may be viewed as inconsistent with the facts agreed to in this agreement, this paragraph does not affect defendant's and the USAO's obligations not to contest the facts agreed to in this agreement.

23. Defendant understands that even if the Court ignores any sentencing recommendation, finds facts or reaches conclusions different from those agreed to, and/or imposes any sentence up to the maximum established by statute, defendant cannot, for that reason, withdraw defendant's guilty plea, and defendant will remain bound to fulfill all defendant's obligations under this agreement. Defendant understands that no one -- not the prosecutor, defendant's attorney, or the Court -- can make a binding prediction or promise regarding the sentence defendant will receive, except that it will be within the statutory maximum.

<u>NO ADDITIONAL AGREEMENTS</u>

24. Defendant understands that, except as set forth herein, there are no promises, understandings, or agreements between the USAO and defendant or defendant's attorney, and that no additional promise, understanding, or agreement may be entered into unless in a writing signed by all parties or on the record in court.

<u>PLEA AGREEMENT PART OF THE GUILTY PLEA HEARING</u>

25. The parties agree that this agreement will be considered part of the record of defendant's guilty plea hearing as if the

1 entire agreement had been read into the record of the proceeding.

2 AGREED AND ACCEPTED

3 UNITED STATES ATTORNEY'S OFFICE
FOR THE CENTRAL DISTRICT OF
4 CALIFORNIA

5 E. MARTIN ESTRADA
United States Attorney

*Karen I. Meyer*        November 28, 2022
KAREN I. MEYER        Date
Assistant United States Attorney

*Jack Nguyen*        November 27, 2022
JACK NGUYEN        Date
Defendant

*Grant Gelberg*        11-28-2022
GRANT GELBERG, ESQ.        Date
Attorney for Defendant
Jack Nguyen

CERTIFICATION OF DEFENDANT

I have read this agreement in its entirety. I have had enough time to review and consider this agreement, and I have carefully and thoroughly discussed every part of it with my attorney. I understand the terms of this agreement, and I voluntarily agree to those terms. I have discussed the evidence with my attorney, and my attorney has advised me of my rights, of possible pretrial motions that might be filed, of possible defenses that might be asserted either prior to or at trial, of the sentencing factors set forth in 18 U.S.C. § 3553(a), of relevant Sentencing Guidelines provisions, and of the consequences of entering into this agreement. No promises, inducements, or representations of any kind have been made to me other than those contained in this agreement. No one has threatened or forced me in any way to enter into this agreement. I am satisfied with the

representation of my attorney in this matter, and I am pleading guilty because I am guilty of the charge and wish to take advantage of the promises set forth in this agreement, and not for any other reason.

_____  November 27, 2022
JACK NGUYEN                       Date
Defendant

CERTIFICATION OF DEFENDANT'S ATTORNEY

I am Jack Nguyen's attorney. I have carefully and thoroughly discussed every part of this agreement with my client. Further, I have fully advised my client of his rights, of possible pretrial motions that might be filed, of possible defenses that might be asserted either prior to or at trial, of the sentencing factors set forth in 18 U.S.C. § 3553(a), of relevant Sentencing Guidelines provisions, and of the consequences of entering into this agreement. To my knowledge: no promises, inducements, or representations of any kind have been made to my client other than those contained in this agreement; no one has threatened or forced my client in any way to enter into this agreement; my client's decision to enter into this agreement is an informed and voluntary one; and the factual basis set forth in this agreement is sufficient to support my client's entry of a guilty plea pursuant to this agreement.

_____  11-28-2022
GRANT GELBERG, ESQ.               Date
Attorney for Defendant
Jack Nguyen

16